UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

PUBLIC UTILITY DISTRICT NO. 2
OF GRANT COUNTY, WASHINGTON,
a municipal corporation,

                                    Plaintiff,

                    vs.

BENTON RURAL ELECTRIC
ASSOCIATION, a Washington
corporation, et al.,

                                    Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

No. CV-04-0163-AAM

**ORDER GRANTING
PROTECTIVE ORDER
RE FOIANINI DEPOSITION,
*INTER ALIA***

## I. BACKGROUND

A telephone conference was conducted on June 15, 2005. David Sonn, Esq., appeared for the plaintiff Public Utility District (PUD), and Richard Kuhling, Esq., appeared for defendants Benton Rural Electric Association (BREA) and Powertelnet Communications, Inc. (PTN).

During the conference, counsel for defendants indicated he would accede to not taking the deposition of Don Godard which had been scheduled for June 17, 2005. This renders moot the plaintiffs' Motion To Quash the Subpoena issued by defendants for Mr. Godard's deposition. Per their agreement, counsel will confer and schedule Mr. Godard's deposition for a mutually convenient date following the parties' mediation scheduled for June 21. Defendants' counsel has

**ORDER GRANTING PROTECTIVE
ORDER RE FOIANINI DEPOSITION-    1**

1    agreed to provide plaintiff's counsel with the documents which Mr. Godard previously provided to

2    defendants' counsel.  Plaintiff's counsel will identify any of said documents which may be

3    privileged and provide defendants' counsel with a privilege log reasonably in advance of the new

4    date scheduled for Mr. Godard's deposition.

5        The deposition of Ray Foianini, Esq., corporate counsel for the PUD and counsel of record

6    for the PUD in the instant litigation, had, pursuant to subpoena, been noted by defendants for June

7    21.  The parties have agreed to continue this deposition because of the mediation scheduled for June

8    21.  This does not, however, render moot the plaintiff's Motion To Quash Subpoena, Or In The

9    Alternative For Protective Order Re Deposition Of Ray Foianini since that deposition may yet occur

10    (pursuant to a new subpoena or otherwise) if mediation is unsuccessful.  Therefore, the court intends

11    to dispose of that motion in this order.  Furthermore, the court will also address the related privilege

12    issue presented in plaintiff's Motion For Protective Order Re: Ex Parte Contacts.

13

14    **II. DISCUSSION**

15        **A. Foianini Deposition/Attorney-Client Privilege**

16        The PUD alleges BREA and PTN improperly seek to examine Foianini about privileged

17    communications between him and the PUD.  PUD acknowledges, however, that it inadvertently

18    disclosed some of these communications to the defendants in documents provided to the defendants

19    pursuant to public records requests by counsel for BREA and PTN, and by a Steve Beckett.  If the

20    court does not prevent examination of Foianini altogether, the PUD asks for a protective order

21    limiting the examination to those communications that were inadvertently disclosed in the

22    documents provided to BREA and PTN pursuant to the public records requests.

23        The federal common law of privilege governs in federal question cases. Fed. R. Evid. 501.

24    *Weil v. Investment/Indicators Research and Management, Inc.*, 647 F.2d 18, 24 (9th Cir. 1981).  The

25    party asserting the privilege has the burden of establishing it, and doing so with respect to a given

26    communication requires demonstrating the privilege has not been waived.  *United States v. Zolin*,

27    809 F.2d 1411, 1415 (9th Cir. 1987).  In the Ninth Circuit, inadvertent disclosures can effect waiver

28

**ORDER GRANTING PROTECTIVE**
**ORDER RE FOIANINI DEPOSITION-    2**

1   and the lack of subjective intent to disclose is merely a factor to consider in a case-by-case waiver

2   analysis. *Id.* Other factors to be considered include: 1) the reasonableness of the precautions taken

3   against disclosure; 2) the time taken to rectify the error; 3) the scope of the discovery; 4) the extent

4   of the disclosure; and 5) the overriding issue of fairness. *In re Sause Brothers Ocean Towing*, 144

5   F.R.D. 111, 115 (D. Or. 1991).

6          There is no indication the PUD took any precautions against disclosure of these documents

7   which it knew, or should have known, were germane to this dispute, be it in its pre-litigation phase,

8   or its litigation phase. There is no indication the PUD sought to rectify this error before now and

9   indeed, PUD has not made any type of formal request to defendants or the court for return of the

10  documents at issue. The scope of the discovery has been broad (30,000 documents according to

11  defendants' counsel). The extent of the disclosure, thus far, is significant as set forth in the

12  declaration of defendants' counsel (729 documents identified as containing potentially privileged

13  communications). This is not a case of inadvertent disclosure of just a few, isolated documents

14  containing privileged communications. The PUD makes no compelling argument that a finding of

15  waiver would be unfair. The court fails to see why it matters that the disclosures occurred through

16  public records requests outside of the formal litigation process. Nothing precluded the PUD from

17  asserting privilege with regard to the public records requests. Accordingly, PUD has waived the

18  privilege with respect to the communications contained in the documents which have already been

19  turned over to defendants pursuant to the public records requests.

20         Under the "subject matter waiver" rule, disclosure of one communication effects waiver of

21  privilege not only as to it, but also others concerning the same subject matter. *Sause Brothers*, 144

22  F.R.D. at 116. The subject matter waiver rule is intended to deter manipulative partial disclosures

23  by litigants seeking advantage thereby. Defendants do not and cannot argue they have been

24  prejudiced by the disclosures made by the PUD, to the extent those disclosures are only partial in

25  nature. There is no indication that the disclosures made by the PUD were intended by the PUD to

26  gain some type of advantage in this litigation. *Id.* Accordingly, PUD will be deemed to have

27  waived the privilege only with respect to the communications between Mr. Foianini and the PUD

28

**ORDER GRANTING PROTECTIVE**
**ORDER RE FOIANINI DEPOSITION-    3**

contained in the documents already provided to defendants pursuant to the public records requests. Mr. Foianini can be examined about those documents.

**B. Ex Parte Contacts**

The PUD seeks an order from the court prohibiting BREA/PTN from making ex parte contact with past-PUD management, including, but not limited to, Donald W. Godard, H.E. Williams, and Coe Hutchinson.

Washington Rules of Professional Conduct 4.2(a) and Model Rule of Professional Responsibility 4.2(a) provide:

> In representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.

In 1991, the American Bar Association Committee on Ethics and Professional Responsibility issued Formal Opinion 359 that "[t]he prohibition of Rule 4.2 with respect to contacts by a lawyer with employees of an opposing corporate party does not extend to former employees of that party."[1] Since issuance of that opinion, the trend among courts has been to permit ex parte communications with former employees about litigation involving their former employer. *United States v. Beiersdorf-Jobst, Inc.*, 980 F.Supp. 257, 260 (N.D. Ohio 1997). In *Beiersdorf*, the court noted the rationale behind Rule 4.2 "is not undermined by allowing uncounseled interviews with former employees who have no existing relationship with, and therefore cannot bind, a represented corporation." *Id.* at 261-62. The court added:

> [P]olicy considerations militate against restricting communications with former employees. A basic cornerstone of our judicial system is the unimpeded flow of information between adversaries to encourage the early detection and elimination of both undisputed and meritless claims. Requiring the approval and the presence of corporate counsel would have the inevitable effect of chilling the exchange of information,

---

[1] In a more recent opinion from 1995, the Committee reaffirmed that Rule 4.2 does not forbid *ex parte* contacts with former employees. *United States v. Beiersdorf*, 980 F.Supp. 257, 261 n. 3 (N.D. Ohio 1997).

**ORDER GRANTING PROTECTIVE**
**ORDER RE FOIANINI DEPOSITION- 4**

1             because former employees would most likely be hesitant about speaking
freely in the presence of their former employer's attorney.

2

*Id.*

3

4        PUD says that "[n]o Washington case discusses the ability of opposing counsel to interview

5 former employees who were in the management/control group."  Actually, in *Wright v. Group*

6 *Health Hospital*, 103 Wn.2d 192, 201, 691 P.2d 564,  (1984), the Washington Supreme Court

7 essentially agreed with the rationale used by the *Beiersdorf* court:

8             We hold *current* Group Health employees should be considered
"parties" for the purposes of the disciplinary rule if, under

9             applicable Washington law, they have managing authority
sufficient to give them the right to speak for, and bind the

10            corporation.  **Since former employees cannot possibly speak for
the corporation, we hold that [the rule] does not apply to them.**

11 (Emphasis added).

12        While there is no per se ethical bar to ex parte contacts with the former employees of a

13 corporation, such contacts may raise a concern regarding risk of the former employees disclosing

14  confidential communications protected by the corporate attorney-client privilege.  *United States of*

15 *America v. Merck-Medco Managed Care, LLC*, 340 F.Supp.2d 554, 557 n.2 (E.D. Pa. 2004).[2]  In

16 *Merck-Medco*, the court held that if the communication sought to be elicited related to the

17 employee's conduct or knowledge during her employment with the corporation, or if it concerned

18 conversations with corporate counsel that occurred during her employment, the communication

19 would be privileged.  *Id*. at 558.  See also *In re Coordinated Pretrial Proceedings*, 658 F.2d 1355,

20 1361 n. 7 (9th Cir. 1981), citing *Upjohn Co. v. United States*, 449 U.S. 383, 394, 101 S.Ct. 677, 683

21 (1981) ("Former employees, as well as current employees, may possess the relevant information

22 needed by corporate counsel to advise the client [the corporation] with respect to actual or potential

23 difficulties").

24        Recognizing the privilege belongs to the PUD and not to Mr. Godard and cannot be waived

25 by Mr. Godard, counsel for defendants maintains he never asked Godard during their ex parte

26

27          [2]  The privilege extends to "communications," not to underlying facts communicated to
counsel.  *Upjohn Co. v. United States*, 449 U.S. 383, 395-96, 101 S.Ct. 677 (1981).

28

**ORDER GRANTING PROTECTIVE
ORDER RE FOIANINI DEPOSITION-   5**

meeting to disclose any communications which took place between Godard and PUD corporate counsel. The Washington Rules of Professional Responsibility (RPC) and Model Rules of Professional Responsibility 4.3 and 4.4 mandate as much. *In re Domestic Air Transportation Antitrust Litigation*, 141 F.R.D. 556, 562 (N.D. Ga. 1992); *Dubois v. Gradco Systems, Inc.*, 136 F.R.D. 341, 347 (D.Conn. 1991). Defendant's counsel also represents that he has not viewed the documents which Mr. Godard provided to him, some of which may be privileged. Accordingly, the court finds no basis for disqualifying defendants' counsel from continued representation of BREA/PTN in this matter.

The PUD has commenced a suit against Mr. Godard in Grant County Superior Court for breach of his "Employment Separation Agreement," alleging he has failed to cooperate with and assist the PUD in efforts to recover any funds improperly paid to BREA/PTN, and for allegedly divulging to BREA/PTN proprietary privileged and confidential information belonging to the PUD. Counsel asks the court to clarify in an order "that former employees should have no fear, if they so choose, of conferring with Defendant[s] or their counsel."

The court believes it would be inappropriate to make such a statement that could be construed as a guarantee that whatever the former employees say to defendants' counsel will not constitute a breach of their separation agreements. Obviously, Mr. Godard and the other former PUD employees must be mindful of PUD's attorney-client privilege since that privilege survives termination of their employment. *Peralta v. Cendant Corp.*, 190 F.R.D. 38, 39 (D. Conn. 1999). The documents sent by Godard to BREA/PTN counsel may be different from the documents which were sent by the PUD to the defendants pursuant to the public records request. As to the latter, the privilege has been waived. Not so with respect to the former, except to the extent documents supplied by Mr. Godard are identical to documents supplied to defendants pursuant to the public records requests.

//

//

//

**ORDER GRANTING PROTECTIVE
ORDER RE FOIANINI DEPOSITION- 6**

**III. CONCLUSION**

Plaintiff's Motion To Quash the Subpoena Re the Godard deposition (Ct. Rec. 95) is **DISMISSED** as being moot.

Plaintiff's Motion For Protective Order re the Foianini deposition and re Ex Parte Contacts (Ct. Rec. 49) is **GRANTED in part and DENIED in part**.

Defendants may depose Mr. Foianini with respect to the communications between him and the PUD contained in the documents disclosed to defendants pursuant to the public records requests. Plaintiff, however, is entitled to assert privilege with regard to any other communications (as long as it pertains to legal advice, not business advice). Should a dispute arise about the assertion of privilege with regard to a particular area of inquiry, defendants may serve and file a motion seeking to compel answers. It goes without saying that plaintiff should exercise caution in invoking privilege and directing Mr. Foianini not to answer particular questions. Granting this protective order renders moot the plaintiff's Motion To Strike the Johnson Declaration (Ct. Rec. 89) and therefore, that motion is **DISMISSED**.

Defendants' counsel is not prohibited from having ex parte contacts with former PUD employees, provided he complies with Washington RPC 4.3 and 4.4 and does not make inquiry which would compromise PUD's attorney-client privilege.

Plaintiff's Motion To Disqualify defendant's counsel (Ct. Rec. 87) is **DENIED**.[3]

**IT IS SO ORDERED**. The District Executive is directed to enter this order and forward copies to counsel of record.

**DATED** this 20th of June, 2005.

       s/ Alan A. McDonald
       ALAN A. McDONALD
      Senior United States District Judge

---

[3] Plaintiff's Motion To Shorten Time for hearing on its motions to disqualify and strike (Ct. Rec. 91) is **GRANTED**.

**ORDER GRANTING PROTECTIVE ORDER RE FOIANINI DEPOSITION-   7**